UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDOLSALAM MOHAMED HUSSEIN and
TAHANI HUSSEIN AHMED ABDULRAB,

        Plaintiffs,                          Case Number 17-12356
                                                      Honorable David M. Lawson
v.

R. STEPHEN BEECROFT, AMBASSADOR,
UNITED STATES EMBASSY — CAIRO, and
UNITED STATES DEPARTMENT OF STATE,

        Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS, DENYING MOTION TO AMEND PETITION, AND DISMISSING CASE

Plaintiff Abdolsalam Mohamed Hussein (a U.S. citizen) has been attempting to obtain authorization for his wife, Tahani Hussein Ahmed Abdulrab (a citizen of Yemen), to enter the United States. The couple has been married since 1993 and they have five children together. The government approved Hussein's I-130 petition (petition for admission of an alien relative) for his wife in 2012. But the plaintiffs have not been able to obtain approval of a visa to allow Abdulrab to enter the country. The plaintiff filed a petition in this Court for a writ of mandamus to compel certain officials of the State Department to adjudicate the visa application. The defendants — all government officials sued in their official capacities and the Department of State — responded with a motion to dismiss, asserting that the visa application was denied on two occasions, and the decision is insulated from judicial review under the doctrine of consular nonreviewability. The plaintiff then filed a motion to amend the petition, seeking to clarify certain facts and add parties. Because the State Department has twice denied the visa application for a legitimate reason, there is no basis to

issue a writ of mandamus. The plaintiff's proposed amended petition would be futile. Therefore, the Court will deny the motion to amend the petition, grant the motion to dismiss, and dismiss the case.

I.

The petition alleges that plaintiff Abdolsalam Mohamed Hussein is a United States Citizen and the husband of plaintiff Tahani Hussein Ahmed Abdulrab, who is a citizen of Yemen. At the time the petition was filed, defendant R. Stephen Beecroft was the Ambassador of the United States Embassy in Cairo, Egypt. His oversight duties included the consular section, which processed and adjudicated visa applications. On July 27, 2012, Hussein filed an I-130 "Petition for Alien Relative" on behalf of his wife. Hussein maintained that they had been married since 1993. On June 6, 2013, the petition was approved by the United States Citizenship and Immigration Service (USCIS) division of the Department of Homeland Security (DHS) and forwarded to the National Visa Center (NVC), where it was assigned a case number. Ms. Abdulrab was interviewed at the Cairo Embassy in early 2016, and, after the interview, the petition was placed in "administrative processing" status. Counsel for the plaintiffs subsequently contacted the Embassy by email several times, to inquire about the status of the petition, but received no response.

Ellen Eiseman, an "attorney advisor" in the Department of State's Visa Services Directorate, Bureau of Consular Affairs, attested that the petition was received by the Department of State's National Visa Center on June 27, 2013. Ms. Abdulrab appeared for an interview relating to the petition and her visa application at the U.S. Embassy in Cairo, Egypt on September 29, 2015. After the interview, the consular officer refused the visa application, citing Section 221(g) of the Immigration and Nationality Act, 8 U.S.C. 1201(g), which is a general provision that states: "No visa

or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g).

Apparently, the consular officer had doubts about the validity of the 1993 marriage representation, stemming from his belief that the marriage document appeared to have been altered, and Hussein's representation in a 1996 passport application that he was not married. On April 19, 2016, the consular officer contacted plaintiff Hussein by telephone and recommended that Ms. Abdulrab submit DNA test results for herself, plaintiff Hussein, and their eldest son, who was born in 1994, as corroborating evidence that the 1993 marriage — upon which the I-130 petition was based — was genuine. That same day, the consular officer contacted Ms. Abdulrab by telephone and "noted that the applicant would come to the Embassy for [a] new refusal letter." Mot. to Dismiss., Ex. A, Ellen Eiseman decl. ¶ 6 (Pg ID 61). On June 7, 2016, the consular officer noted in the case record that no further information had been received. The consular officer tried to contact the plaintiffs again by telephone on October 5, 2017, but the phone numbers provided for them were out of service; the consulate also sent an email to the address on record asking the petitioners to schedule an appointment at the Embassy on October 9 or 10.

On October 7, 2017, the Embassy received an email from attorney Julie Goldberg, the plaintiffs' attorney, stating that Ms. Abdulrab had returned to Yemen, but that Ms. Goldberg would convey the information.

In a later declaration, Eiseman attested that Ms. Abdulrab appeared again at the Embassy for an interview on November 9, 2017. According to Eiseman, the consular officer interviewed Ms. Abdulrab under oath, but Ms. Abdulrab did not submit any further information in support of her application. On November 13, 2017, the consular officer "determined that, based on information provided in the visa application, the applicant failed to establish that she and [the] petitioner are in a legal marriage." Reply, Ex. C, Ellen Eiseman decl. ¶ 6 (Pg ID 94-95).

On November 14, 2017, the consular officer drafted a memo to accompany the petition explaining the results, and the next day the I-130 petition was returned with the memo to the National Visa Center for reconsideration and possible revocation. The memo sent to USCIS to explain the return of the application presumably included the following information, which was recorded in case log entries made by the consular officer:

> On March 4, 2016, the consular officer entered a case note that "since 1993 marriage document does appear altered, and [petitioner's] 1996 ppt [passport] application indicates he was not married in 1996, so [*sic*] the 1993 marriage is suspicious" and further reflects that the consular officer noted that "to resolve, recommend that Tahini do DNA testing with the oldest son Yassin Abdosolam Hussein [born in 1994], who lives with the father in the U.S."

Eiseman decl. ¶ 5 (Pg ID 185). Some DNA results were delivered by the petitioners to the consular authority after the visa application was returned to USCIS, but those results were for a younger child born in 2011, not for the eldest child born in 1994.

According to the recent declaration of a representative of USCIS, the petition presently is assigned to the agency's California Service Center (CSC) and is listed as "pending reopening and re-adjudication." Gov't Resp. [25], Ex. B, Christine Sung decl. ¶¶ 1, 5 (Pg ID 190-91). Sung attested that the reason for the return stated in the consular memo was that "information was unavailable to USCIS at the time of the petition's approval which indicates that there is insufficient evidence to support a finding by a preponderance of the evidence that the marriage is valid for immigration purposes." *Id.* ¶ 5. The CSC presently has 8,000 pending petitions in "consular return" cases, meaning petitions that were returned by the consular officer for further review, and the center has 15 assigned Immigration Services Officers adjudicating I-130 petitions. *Id.* ¶¶ 3-4. Sung attested that "[c]onsular return cases are reopened and re-adjudicated when capacity and resources are available," and that a higher priority is given to other types of cases under Department of State policy. *Id.* ¶ 4.

The plaintiffs filed their petition for a writ of mandamus on July 20, 2017. The petition pleads claims seeking issuance of a writ of mandamus (Count I) to compel adjudication of the petition, an order compelling administrative action based on arbitrary and capricious or unreasonable delay under the Administrative Procedures Act (APA) (Count II), and a non-substantive count seeking congruent declaratory relief (Count III). The petition also alleges in Counts IV and V that the defendants violated plaintiff Hussein's procedural and substantive rights under the Due Process Clause of the Fifth Amendment by denying his right to make personal decisions concerning his family relations (i.e., prohibiting him from realizing his desire to have his spouse reside in the U.S. with him). In their prayer for relief, the plaintiffs ask that the Court declare that the delayed

adjudication of the petition was arbitrary and capricious and violated Hussein's Due Process rights, and compel the defendants to issue a decision on the petition within 30 days.

The proposed amended petition would add additional facts that have developed since the original filing. It also would add as defendants the USCIS Director and the Secretary of the Department of Homeland Security.

The defendants oppose the motion to amend and seek dismissal. The Court heard oral argument on February 8, 2018.

## II.

The government insists that it has adjudicated the plaintiffs' visa application — twice — and denied it "on the basis of a facially legitimate and bona fide reason." *See Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). It reasons that because the visa application was fully adjudicated, the mandamus claim brought by the plaintiff is moot. Mootness, says the government, means an absence of subject matter jurisdiction for want of a live controversy. Moreover, courts cannot look behind the reasons for the denial in the absence of a plausible showing of bad faith, which has not been made out here.

The plaintiffs respond that the government's proffered reason for denial of the adjudication — section 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1201(g) — does not constitute a "facially legitimate and bona fide reason" for refusal of the visa application. The plaintiffs insist that until a consular officer issues a denial on the basis of a valid statute defining inadmissibility, *see* 8 U.S.C. § 1182(a)(1)-(10), there has been no "facially legitimate and bona fide reason" for the denial, and therefore no *final* adjudication, to which the plaintiffs are entitled. Therefore, they say, their claim is live, and the doctrine of consular nonreviewability does not apply.

The government's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(1). That rule "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Ibid.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A factual attack," like the one brought here, "challenges the factual existence of subject matter jurisdiction." *Ibid.* When the factual basis for jurisdiction is challenged, the Court may consider a variety of sources of evidence, even evidence beyond the pleadings, "and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60. The "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* at 760 (citing *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

It is beyond question that "[t]he power of the federal courts is limited to hearing actual cases and controversies." *Miller v. City of Wickliffe*, 852 F.3d 497, 502-03 (6th Cir. 2017) (citing U.S. Const. art. III, § 2, cl. 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish Article III standing, the plaintiff seeking compensatory relief must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Town of Chester v. Laroe Estates, Inc.*, --- U.S. ---, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016)). "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue

throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotations omitted).

The Immigration and Nationality Act, 8 U.S.C. § 1151 *et seq.*, allows certain persons to apply for entry to the United States based on their status as an "immediate relative" of a United States citizen. *See* 8 U.S.C. § 1152(b)(2)(A)(i) ("For purposes of this subsection, the term 'immediate relatives' means the children, spouses, and parents of a citizen of the United States."). "[A]ny citizen of the United States claiming that an alien is entitled to . . . immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification." 8 U.S.C. § 1154(a)(1)(A)(i). "A citizen or lawful permanent resident of the United States petitioning under section 204(a)(1)(A)(i) . . . of the Act for a qualifying relative's classification as an immediate relative under section 201(b) of the Act . . . must file a Form I-130, Petition for Alien Relative." 8 C.F.R. § 204.1(a)(1).

The visa application process begins with submission of the petition to USCIS (which is part of DHS), which arranges for an investigation of the facts stated in it by various government agencies. "After an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status." 8 U.S.C. § 1154(b). "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a).

Section 1201(g) of the INA, however, instructs that no visa can issue if the applicant is ineligible under 8 U.S.C. § 1182, the visa application does not comply with applicable statutes or regulations, or the consular officer "has reason to believe" that the alien applicant is ineligible for a visa "under . . . any other provision of law." And a governing regulation states that "[t]he consular officer shall suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS . . . if the officer knows or has reason to believe that . . . the beneficiary is not entitled to the status approved." 22 C.F.R. § 42.43(a).

It is undisputed in this case that the consular officer twice interviewed Ms. Abdulrab and thrice denied her visa application, each time citing section 1201(g) of the INA as the basis for the refusal. The declaration of the government's agent further indicates that the applicant was informed on each occasion that the visa was refused because she had failed to carry her burden of establishing that she has a bona fide marital relationship with a United States citizen.

The plaintiffs contend that the consular file notes are ambiguous and perplexing in that they only cite section 1201(g) generally, which allows several bases for refusal of an application, and that the unadorned statutory citation supplies no hint as to the specific factual basis of the decision. They contend, therefore, that there was no "facially legitimate and bona fide reason" for the denial. However, the statute plainly permits refusal when the consular officer "has reason to believe that [the applicant] is ineligible" for the status claimed, including specifically the status of qualifying as an "immediate relative" of a U.S. citizen. And, whatever ambiguity there may have been in any other communications with the plaintiffs, it now is beyond dispute that they fully have been informed of the specific factual basis for the denial, based on the attestation of the government's consular legal officer stating that the refusal was based on failure to establish the bona fides of the marriage. The

plaintiffs also argued in their response that the administrative process was not complete because the petition had not been returned to the National Visa Center. But that position, like the petition itself, is rendered moot by the government's undisputed assertion that the petition was returned to the NVC, with a memo stating the reasons for the refusal, in November of last year.

The plaintiffs also have filed a motion seeking to amend their petition to add as defendants the USCIS and DHS, and officials of those domestic agencies, and to add a claim that plaintiff Abdulrab was "harassed" by the consular officer, premised on a refusal to consider DNA testing evidence that was submitted to the Embassy in January 2018, and disregard of certain other information that the plaintiffs contend was submitted to authenticate the marriage. However, all of the putative claims and arguments by the plaintiffs that invite the Court to look beyond the facial basis for the refusal of the classification and visa applications are without merit, since the consular decision denying the application is not open to substantive review by the Court. As Justice Kennedy explained in his concurrence in *Din* (which, as the government points out, is the narrowest basis of the Court's holding in that case), "'an executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made 'on the basis of a facially legitimate and bona fide reason.'" *Kerry v. Din*, --- U.S. ---, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring) (quoting *Kleindienst*, 408 U.S. at 770). "Once this standard is met, 'courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against' the constitutional interests of citizens the visa denial might implicate." *Ibid.*

The plurality in *Din* also held that there was no cognizable Due Process right implicated by a case such as this, and that any explanation of the basis for the denial of an application for entry of a non-citizen spouse was more than was required by the Due Process clause. The concurring

plaintiffs also argued in their response that the administrative process was not complete because the petition had not been returned to the National Visa Center. But that position, like the petition itself, is rendered moot by the government's undisputed assertion that the petition was returned to the NVC, with a memo stating the reasons for the refusal, in November of last year.

The plaintiffs also have filed a motion seeking to amend their petition to add as defendants the USCIS and DHS, and officials of those domestic agencies, and to add a claim that plaintiff Abdulrab was "harassed" by the consular officer, premised on a refusal to consider DNA testing evidence that was submitted to the Embassy in January 2018, and disregard of certain other information that the plaintiffs contend was submitted to authenticate the marriage. However, all of the putative claims and arguments by the plaintiffs that invite the Court to look beyond the facial basis for the refusal of the classification and visa applications are without merit, since the consular decision denying the application is not open to substantive review by the Court. As Justice Kennedy explained in his concurrence in *Din* (which, as the government points out, is the narrowest basis of the Court's holding in that case), "'an executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made 'on the basis of a facially legitimate and bona fide reason.'" *Kerry v. Din*, --- U.S. ---, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring) (quoting *Kleindienst*, 408 U.S. at 770). "Once this standard is met, 'courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against' the constitutional interests of citizens the visa denial might implicate." *Ibid.*

The plurality in *Din* also held that there was no cognizable Due Process right implicated by a case such as this, and that any explanation of the basis for the denial of an application for entry of a non-citizen spouse was more than was required by the Due Process clause. The concurring

minority held that, even if such a right existed, it fully was vindicated by the statement of a facially legitimate justification, and further judicial inquiry is prohibited.

The plaintiffs insist, however, that the citation of section 1201(g) does not satisfy the requirement of a legitimate reason for denying the application; they maintain that the consular officer must identify one of the 10 statutory grounds for inadmissibility under section 1182. But section 1201(g) contains no such exclusivity. Instead, the statute instructs that no visa will issue if, among other reasons, "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, *or any other provision of law*." 8 U.S.C. § 1201(g)(3) (emphasis added).

The decisions cited by the plaintiffs in their papers on the motion to amend the petition do not change that reality, or the fact that the decision not to issue the visa is unreviewable. Those decisions readily recognize that the doctrine of consular nonreviewability "sweeps broadly, 'appl[ying] even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual or legal error.'" *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) (quoting *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 4 (D.D.C. 2009)) (collecting cases). "'[T]he doctrine also applies where a plaintiff attempts to circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision.'" *Ibid.* (quoting *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009)).

In the *Nine Iraqi Allies* case, the district court found that the doctrine of nonreviewability did not apply because "the doctrine of consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application." *Ibid.* But that case readily is distinguishable because in *Nine Iraqi Allies* the petitioners' cases had been left to languish interminably in an "administrative processing" status, which the district court found was an intermediate step in the process of consular review that did not indicate that any final decision had been made. *Id.* at 268, 282, 283-84, 289. Here, by contrast, the petition is not in "administrative processing" status, but has been returned to the USCIS with a recommendation to revoke the prior determination of the petitioners' marital status. The petitioners have not pointed to any authority holding that the consular officer has any further task that has not been performed since the petition was returned to USCIS. Moreover, the consular officer did exactly what the pertinent regulations require upon the discovery of information that led him to conclude that the determination of marital status by the USCIS may have been in error. 22 C.F.R. § 42.43(a) ("The consular officer shall suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS . . . if the officer knows or has reason to believe that . . . the beneficiary is not entitled to the status approved.").

If any of the prior communications with the petitioners failed adequately to set forth the specific factual basis of the consular officer's decision, then the administrative record presented in the case certainly conclusively has explained it: The consular officer found that the proffered certificate of marriage appeared to have been altered, and that Mr. Hussein had stated that he was *not* married in a prior passport application submitted in 1996 — three years *after* the claimed date of the suspect nuptials. Whether or not the consular officer disregarded other information submitted

by the petitioners — unreasonably, or even unlawfully — is of no consequence to *this* case, because the Court is prohibited from looking beyond the facially stated basis for the decision to return the petition to USCIS. "'[A]n executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made 'on the basis of a facially legitimate and bona fide reason.'" *Kerry*, 135 S. Ct. at 2140 (Kennedy, J., concurring) (quoting *Kleindienst*, 408 U.S. at 770). "Once this standard is met, 'courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the constitutional interests of citizens the visa denial might implicate." *Ibid.*

The petitioners contend that the case of *Atiffi v. Kerry*, No. 12-3001, 2013 WL 5954818 (E.D. Cal. Nov. 6, 2013), is analogous and favors their position that the consular authority never stated any facially legitimate or bona fide reason for refusing to issue a visa. But the *Atiffi* case is distinguishable because there the form letter sent to the petitioner did not indicate *any* basis for the refusal. As the district court explained:

> *The USCIS letter gave Ms. Atiffi no information about why her visa application was refused. Even though the USCIS letter states that the statutory grounds for the denial of Ms. Atiffi's application are "marked with 'X,'" in fact, no statutory grounds were so marked.* Rather, the letter advised Ms. Atiffi only that: "Your petition has been returned to U.S. Citizenship and Immigration Services (USCIS) through the National Visa Center (NVC) for reconsideration and disposition. Further inquiries should be directed to the USCIS office that processed your petition."

*Atiffi*, 2013 WL 5954818, at *1 (footnotes omitted; emphasis added). Here, by contrast, there is no indication that any form letters sent to the petitioners had pertinent sections left blank, and the administrative record otherwise amply illuminates the specific basis of the refusal.

The plaintiffs' main request for relief in the petition and proposed amended petition is mandamus. "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the

defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011). "Mandamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Ibid.* (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

It is now undisputed that the claims for mandamus and relief under the APA against the original defendants are moot, because the consular role in the process of reviewing the application fully was performed upon the return of the application to the National Visa Center. The plaintiffs propose freshly to allege that the consular authority acted unreasonably in refusing to consider DNA test results submitted after the petition — at their own insistence — was returned to the domestic immigration authorities. But they have not cited any statutory authority that would permit consideration or reconsideration of such new information in support of an application that no longer is within the purview of the consular officials.

The plaintiffs ask to amend the petition, and generally "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). But it is well established that leave to amend will be denied when the proposed amendment would be futile. *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980). The various arguments mounted in the proposed amended petition that the consular official failed to give appropriate consideration to the information that the plaintiffs did submit is immaterial under any reading of *Mandel* and *Din*, because the denial was based on a facially legitimate statutory and factual basis, and no further judicial inquiry into the sufficiency of that factual basis is permitted under those controlling decisions. Moreover, the plaintiffs' putative claims that the DHS and USCIS

have "unreasonably delayed" acting on the petition since it was returned to the National Visa Center in November 2017 are devoid of any apparent credible factual basis, given the short time since the application was returned.

III.

The plaintiffs' request for mandamus is moot, and the amended petition could not withstand a motion to dismiss, and therefore the amendment would be futile. *See Head*, 870 F.2d at 1123 (quoting *Martin*, 801 F.2d at 248). The Court does not have subject matter jurisdiction over a moot claim.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt. #12] is **GRANTED**.

It is further **ORDERED** that the plaintiffs' motion to amend the petition [dkt. #22] is **DENIED**.

It is further **ORDERED** that the petition is **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 25, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 25, 2018.

s/Deborah Tofil
DEBORAH TOFIL